HENRY POLLAK (INC.) *v.* UNITED STATES (No. 3392)[1]

---

[1] T. D. 46324.

United States Court of Customs and Patent Appeals, November 20, 1931

A. H. *Goodman* for appellant.

Charles D. *Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

[Oral argument October 7, 1931, by Mr. Goodman and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:[1]

Merchandise comprising articles, referred to generally by appellant as wool bodies, imported at the port of New York, was classified by the collector and assessed for duty at various rates under paragraph 1115 of the Tariff Act of 1922, it being held by him that said articles were women's hats partly manufactured and, therefore, covered by the language of said paragraph which reads:

PAR. 1115. Clothing and articles of wearing apparel of every description, not knit or crocheted, manufactured wholly or in part, composed wholly or in chief value of wool, valued at not more than $2 per pound, 24 cents per pound and 40 per centum ad valorem; valued at more than $2 but not more than $4 per pound, 30 cents per pound and 45 per centum ad valorem; valued at more than $4 per pound, 45 cents per pound and 50 per centum ad valorem.

Appellant protested the decision of the collector, making alternative claims, but relying before the Customs Court and before this court upon the applicability of paragraph 1119 of said act.

PAR. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

The suit was heard and determined by the First Division of the Customs Court, Judge McClelland, presiding judge of that division, in an opinion affirming the decision of the collector, and Judge Sullivan concurring in a separate opinion. Judge Brown dissented. From the judgment the present appeal was taken.

Exhibit 1 is agreed to be typical of the merchandise. It consists of a felt body, composed in chief value of wool, which has been wrought into a somewhat conical shape or form, bearing much resemblance to the shape or form of ladies' finished woolen hats.

[1] Rehearing denied.

While it is not disputed that ladies' hats are wearing apparel within the meaning of paragraph 1115 of the Tariff Act of 1922, two contentions are made by appellant:

First, that, in the condition as imported, the articles had not been so advanced in manufacture as to have reached the stage of "wearing apparel [hats] * * * manufactured wholly or in part," but required further processing to reach that stage.

Second, that even assuming them to have been advanced to such a stage, the testimony in regard to their uses establishes the fact that substantial quantities of them were used in the making of things other than hats, things not included in wearing apparel in a tariff sense, to wit, artificial flowers, trimmings, ladies' hand bags and vamps for ladies' shoes, and that, therefore, the merchandise had not been dedicated in an exclusive sense to the manufacture of a single article or class of articles.

Much testimony was taken in the case, nine witnesses being called by appellant and thirteen by the Government. We shall not endeavor to review the testimony of each individual witness. It is fairly established that in order to bring the articles to the stage or condition as imported a number of processing steps had been taken.

Mr. Sargent, an American manufacturer, who makes bodies and also makes ladies' finished hats, testified as to these different steps and filed a number of photographs of the operations incident to bringing the crude material from its natural state to the state represented by Exhibit 1. From these photographs and the explanatory testimony of the witness it appears that these processes embrace nine distinct steps after the stock has been mixed and is ready to place on the cards, to wit: (1) Carding, which forms the shape upon cones, (2) hardening the body, (3) hardening the tip, which the witness says is the top, (4) shrinking or folding the body, (5) "further folding of the wool bodies, and a tightening of the felt," (6) dyeing or coloring, (7) stretching the tip, (8) a pulling process performed by two men, "straightening out the whole hat to make the hat form," and (9) pouncing, "getting the surface of the hat body down to evenness, on the machine."

It is further fairly established that in order to make ladies' finished hats from the imported articles numerous additional steps must be taken.

Mr. Belth, a witness for appellant, who stated that he had been a manufacturer of women's hats for 25 years and had for many years employed material like Exhibit 1 in making them, described these additional operations in detail, stating that they consisted of (1) molding, (2) stamping out, (3) pouncing, (4) buffing, (5) hydraulic pressing, (6) cutting, (7) trimming, (8) lining, and (9) finishing.

Exhibits illustrating the products in the condition wrought by these successive operations described by Mr. Belth were filed in evidence.

The evidence establishes the fact that the merchandise is brought to the form in which imported by the use of a machine specially constructed for that purpose and in universal use for making wool hat bodies. The testimony further establishes that at least some of the steps described by Mr. Sargent are necessary to be had in advancing the article, beyond the condition as imported, to the finished-hat stage whether the article be finally used for making a hat or for one of the other purposes, but these additional steps are not shown necessarily to include shaping where the article is for other than hat use.

From the testimony in the case it seems obvious that the articles as imported are hat shapes and are designed and manufactured for the making of women's hats. With this fact established, we turn to the contentions of appellant, heretofore stated.

As to the first of these contentions, that the articles are not "wearing apparel * * * manufactured wholly or in part," we feel confident from the testimony in the case that the imported articles are partly manufactured articles. The many operations or processes through which they have passed and the shapes into which they have been wrought upon hat-making machines have advanced them beyond the point of mere material. The court below has so found and its finding is, in our opinion, in accord with the weight of the evidence, and appellant's second contention as to the legal result flowing from the use of some of the articles for purposes other than hat making will be considered in the light of this holding.

Upon this second point, the evidence fairly establishes the fact, we think, that substantial quantities of the imported merchandise are at times used in the making of articles other than hats.

Apparently, about the time of the importations involved, it was the fashion for ladies, in many instances, to have something of a costume *ensemble*, consisting of a hat trimmed with designs or flowers made from the same material as the hat itself, together with artificial flowers of the same material, worn as boutonnières or attached in some manner to the dress, with shoes having vamps of the material, and, to complete the *ensemble*, a hand bag made of the material. In numerous instances contrasts would be produced by having the trimmings, etc., made from the same materials but of different colors.

The quantities used for ladies' hand bags and for shoe vamps are not shown to be very large. The use for these purposes has depended, as also have the uses for trimmings and artificial flowers, upon the fashion in vogue. Indeed it seems probable that the hand bag and shoe uses were somewhat experimental in an effort to start a fashion.

In the brief for appellant it is claimed that the record justifies the conclusion that—

The quantities as used in the making of the different articles expressed in percentage terms, in relation to the entire amount imported, are as follows:

Sixty per cent used for making of hats;

Twenty per cent used for making of flowers, trimmings, etc., by hat manufacturers;

Eighteen per cent used by supply houses in making of flowers, trimmings and by ladies' hand-bag manufacturers;

Two per cent used in the making of shoes.

Whether the percentages claimed for other than hat uses are shown by the proof to be quite so high as contended might be questioned, but the aggregate is sufficient to be regarded as substantial.

The articles for which these uses were had, trimmings, artificial flowers, ladies' hand bags and shoe vamps, are not wearing apparel in a tariff sense. In *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 149, 158, T. D. 43473, this court said—

In the tariff sense, "trimmings" and "ornaments," commonly and commercially, are specific things. * * *

Ladies' hand bags and shoes are also provided for in other paragraphs. It is, therefore, argued by appellant that, since substantial percentages of the material are used in the making of articles not wearing apparel in a tariff sense, the merchandise has not been dedicated to making wearing apparel, and hence does not fall within the doctrine announced by this court in cases cited by the court below such as *Factor* v. *United States*, 15 Ct. Cust. Appls. 401, T. D. 42570, and cases therein mentioned, and *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, 357, T. D. 43798.

Indeed, as to the latter case, it is insisted rather that it makes in appellant's favor because of the expression therein—

This court is committed to the doctrine that an imported article may be classified as a manufacture of anything only when it has been dedicated to some exclusive use. * * *

We may here remark, in order to give the entire holding of this court, that the last quoted sentence was supplemented by the further statement—

* * * This exclusive use is not necessarily confined to any one article, but may cover "a particular kind or class of articles." * * *

We do not think that the issue in this case can be determined by the mere quantity of the merchandise used for making something other than hats, or wearing apparel, but its dedication must rather be determined from the standpoint of what the merchandise was actually designed, manufactured, and shaped for.

If it was, in fact, designed, manufactured and shaped for the purpose of making hats and was dedicated to that use at the time of importation, it is wearing apparel manufactured in part and classifiable under paragraph 1115, and the fact that a considerable number of the shapes so dedicated were diverted from hat making to use as trimmings and artificial flowers (with a small quantity used incidentally for shoes and bags to create an *ensemble* for complying with a temporary fashion, or perhaps in an effort to create a fashion), should not, we think, be held to justify classification outside that dictated by its original and designed purpose.

What was said by this court in *Nyman & Schultz* v. *United States*, 14 Ct. Cust. Appls. 432, T. D. 42060, seems entirely apropos to the case at bar. That case involved thin strips of steel, perforated at intervals to fit a standard make of safety-razor blades. There was some proof indicating that it was used to some extent for other than razor-blade purposes. Affirming the court below we held them to be unfinished blades for safety razors, among other things, saying:

\* \* \* The fact that unfinished safety-razor blades may be used, as we think they are used, for window scrapers, or desk knives, does not make them any less unfinished safety-razor blades. We think they had been dedicated to a single use before reaching this country. \* \* \*

The statement has been made already that the proof shows that the shapes here involved were formed on a machine designed for hat making. Certain testimony of appellant's witness, Belth, upon this point is as follows:

Justice McCLELLAND. Is it because of the particular make of this machine that it comes out in this form?

The WITNESS. There is only one machine built for it; in America and Europe they use one kind of machine.

Justice McCLELLAND. That is for making hat bodies?

The WITNESS. Yes, sir.

Justice McCLELLAND. Do you mean that cloth like that could not be made by other machines?

The WITNESS. Yes.

Justice McCLELLAND. Are not these machines especially designed for the purpose of making hat bodies?

The WITNESS. Yes, sir; hat bodies.

The uses for hand bags were quite limited, and we can not regard such uses as being more than experimental or fugitive. There is some evidence to indicate that the hat-shaped bodies were *satisfactory* for use in making these bags, but there is no material evidence to show that this shape was *essential* even to making bags, and none whatever to show that that particular *shape* was even desirable over flat material for trimmings, artificial flowers, and shoe vamps, the latter of which also were of small moment.

The burden of overcoming the correctness of the collector's classification rested upon the importer, and doubtless in this case, which

gives evidences of careful preparation, all available proofs on all essential points were presented.

At any rate, we are not prepared to hold that the findings of fact of the court below are against the weight of the evidence, and under its findings of fact the law was correctly applied.

The judgment of the United States Customs Court is *affirmed*.